UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David Ricketts,<br><br>  Plaintiff,<br><br>v.<br><br>Nathan Maggard, Bryan Birkolz,<br>and Jessica Feda,<br><br>  Defendants. | Case No. 19-cv-00276 (WMW/HB)<br><br>**ORDER AND<br>REPORT AND<br>RECOMMENDATION** |

David Ricketts, Reg. No. 09486-040, FMC Rochester, P.O. Box 4000, Rochester, Minnesota, 55903, *pro se*.

Adam Hoskins, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants.

HILDY BOWBEER, United States Magistrate Judge

In this action brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff David Ricketts alleges that prison employees at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester") and the United States Medical Center for Federal Prisoners in Springfield, Missouri ("USMCFP Springfield") failed to protect him, retaliated against him, and/or were deliberately indifferent to his serious medical needs. Plaintiff sues Nathan Maggard, an employee at USMCFP Springfield; Jessica Feda, the Head of Physical Therapy at FMC

1

Rochester; and Bryan Birkolz, Associate Warden of Medical[1] at FMC Rochester.[2] This matter has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1.

On September 6, 2019, Defendants filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment. [Doc. No. 35.] The Court granted Plaintiff an extension of time to respond until November 6, 2019 [Doc. No. 43], but Plaintiff failed to respond to Defendants' Motion. Instead, on November 12, 2019, Plaintiff filed a Motion to Amend his Complaint. [Doc. No. 44.] For the reasons stated below, the Court recommends granting Defendants' Motion to Dismiss, and denies Plaintiff's Motion to Amend.

## I.   BACKGROUND

The following facts are taken from Plaintiff's self-described "Bivens Action Motion TORT CLAIM" [Doc. No. 15] (hereafter "Am. Compl."), which the Court has construed as the operative pleading in this case [Doc. No. 18].

Plaintiff suffers from Brown-Sequard syndrome and describes himself as "highly

---

[1] Plaintiff referred to Birkholz as an "Asst. Warden of Medical," but Defendants indicate that Birkholz's title is actually "Associate Warden of Medical," so the Court will refer to him as such. Neither party claims the difference in title makes a difference for purposes of this motion.

[2] Plaintiff also named Dr. Claudia Nassaralla, his primary physician at FMC Rochester, in his Amended Complaint. [Doc. No. 15.] The Court previously conducted a review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A(a) and dismissed the claims against Dr. Nassaralla. [Doc. No. 32.]

disabled." (Am. Compl. ¶¶ 2, 12.[3]) Brown-Sequard syndrome is a rare neurological condition that causes weakness, paralysis, and loss of sensation. *Brown-Sequard Syndrome Information Page*, Nat. Inst. Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/All-Disorders/Brown-Sequard-Syndrome-Information-Page. Plaintiff is currently incarcerated at FMC Rochester, a federal prison that specializes in long-term medical care. Plaintiff was transferred to FMC Rochester on May 22, 2018 (Am. Compl. ¶ 17); before that he was housed at USMCFP Springfield in Missouri (*Id.* ¶ 1). Plaintiff's claims are based on events that transpired at both facilities.

First, Plaintiff alleges that in April 2017, Nathan Maggard, a USMCFP Springfield employee, told another inmate that Ricketts was a snitch. (*Id.* ¶ 1.) Plaintiff alleges that on May 24, 2017, the other inmate entered Plaintiff's cell, pinned Plaintiff to the bed, and attempted to suffocate him with a plastic bag. (*Id.* ¶ 2.) Plaintiff's sleeping cellmate woke up to the commotion and stopped the assault. (*Id.*) Plaintiff reported the assault and was placed in the Special Housing Unit ("SHU"). (*Id.* ¶¶ 3–4.) Plaintiff alleges that while he was in the SHU, Maggard "continuously harassed [him] by hitting [him] with the strobe light setting" on his flashlight, tapping on the door, and flicking on and off the light to Plaintiff's cell. (*Id.* ¶ 5.) Plaintiff also alleges that Maggard told "others" that Ricketts was a "sexual deviant." (*Id.* ¶ 6.) Plaintiff reports that he suffered two mini

---

[3] Plaintiff's Amended Complaint numbers paragraphs continuously under the headings "Jurisdiction," "Venue," and "Parties." The numbering then starts over under the fourth heading, "Statement of the Claim," which begins on page 3. Unless otherwise specified, citations refer to the numbered paragraphs in the "Statement of the Claim" section of the Amended Complaint.

strokes while he was in the SHU at USMCFP Springfield.  (*Id.* ¶ 8.)  Plaintiff also claims that in retaliation for filing a complaint against Maggard, prison officials temporarily reduced his care level from a Level 4 to a Level 3.[4]  (*Id.* ¶ 11.)

On May 22, 2018, Plaintiff was transferred to FMC Rochester, where he was placed on a "24 hour nursing floor" due to his condition.  (*Id.* ¶¶ 17–18.)  Plaintiff then met with Jessica Feda, a physical therapist at FMC Rochester and an employee of the United States Public Health Service.  (*Id.* ¶¶ 6 (Section III), 19.)  He explained to Feda that he needed an electric wheelchair and a "tri-core pillow" for his neck, as was suggested by the physical therapist at the facility in Springfield.  (*Id.* ¶ 20.)  Plaintiff alleges that Feda denied both requests in further retaliation for Plaintiff's complaints against Maggard.  (*Id.* ¶ 21.)  Plaintiff filed several administrative complaints and claims that he was then issued "a power wheel chair . . . to only be used outside to traverse across the compound," but not while on his housing unit.  (*Id.* ¶ 24.)  Plaintiff claims the electric wheelchair was later taken away.  (*Id.* ¶ 40.)  Plaintiff claims that he also wrote "an electric cop-out" to Associate Warden of Medical Bryan Birkholz to notify him of the issues concerning his physical therapy, "which falls under his perview [sic]."[5]  (*Id.* ¶ 25.)

Plaintiff alleges that Feda issued him a cervical pillow (but not a tri-core pillow), but she "never checked to see if it fit [his] head or neck area."  (*Id.* ¶¶ 24, 27.)  He

---

[4]  Plaintiff does not explain the significance of this change, but the Court infers that Plaintiff received a lesser amount of medical care during this time.

[5]  "The term 'copout' refers to an informal request made by an inmate to a staff member at a correctional facility."  *West v. Shultz*, No. 1:12-cv-1004, 2018 WL 4385181, at *1 n.1 (M.D. Pa. Sept. 14, 2018).

4

believed the pillow was too thick and says that when he complained of it to Feda, she told him the pillow was standard issue. (*Id.* ¶ 26.) Plaintiff claims that without a tri-core pillow he is unable to sleep well and has lost weight. (*Id.* ¶ 29.)

Plaintiff states that on November 13, 2018, he was transferred to a different housing unit. (*Id.* ¶ 38.) He alleges the officer who moved him told him the order came from "the Asst. Warden of medical," which the Court interprets as a reference to Birkholz. (*Id.* ¶¶ 38–39.) Plaintiff claims the transfer was a further act of retaliation because the new unit was "an environment not condusive [sic] to Plaintiff's needs." (*Id.* ¶ 63.) Specifically, "there are no electronic door openers at the housing unit, neither are there any at the dining hall where Plaintiff must access for meals." (*Id.*) He also claims that the manual wheelchair limits his access to certain parts of the prison compound, which has caused him to miss meals and medication distributions. (*Id.* ¶¶ 41, 45.) As a result of this inaccessibility, Plaintiff relies on other inmates to push his wheelchair around the unit. (*See id.* ¶ 63.) Plaintiff notes that he was "assigned a pusher" through the "pusher program," but complains about the availability of such assistance since "those pushers were told they would have to do all their other work assignments (as Unit Orderlies) plus be sure to get those of us that need help to our destinations and back." (*Id.* ¶¶ 68–69.)

Finally, Plaintiff alleges that he developed two pressure sores on his buttocks as a result of the manual wheelchair. (*Id.* ¶¶ 30–31.) In January 2019, Plaintiff received "a different kind of Roho cussion [sic]" to sit on. (*Id.* ¶ 51.) Two medical professionals have since examined Plaintiff and told him that the sores are healed, but Plaintiff believes

he still suffers from at least one open wound. (*See id.* ¶¶ 51, 53–54.)

Plaintiff sues all Defendants in both their individual and official capacities (Am. Compl. ¶¶ 4–7 (Section III)), and for both monetary and injunctive relief (Am Compl. at 15). Plaintiff asserts his claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[6] alleging violations of the First, Fifth, Eighth and Fourteenth Amendments. First, Plaintiff alleges Maggard labeled him a snitch and failed to protect him from the assault by another inmate at USMCFP Springfield, in violation of the Eighth Amendment. (*Id.* ¶ 56.) Second, Plaintiff alleges the Defendants violated his First Amendment rights by retaliating against him for making a complaint against Maggard. (*Id.* ¶¶ 58, 62–63.) Third, Plaintiff sues Birkholz and Feda for violating his rights under the Eighth Amendment by their deliberate indifference to his serious medical needs. (*Id.* ¶¶ 65–70.)

## II.   STANDARD OF REVIEW

Defendants have styled their motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment." [Doc. No. 34.] First, Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1), (2), and (6).

On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all

---

[6] Plaintiff has not asserted a claim under the Federal Tort Claims Act. Furthermore, he alleges only violations of federal constitutional law (*see* Am. Compl. at ¶¶ 56 and 58, and p. 18 ("Count 3: Deliberate Indifference to Serious Medical Need in Violation of Plaintiff's 8th, 5th and 14th Amendment Rights")). Constitutional tort claims "are not cognizable under the FTCA." *Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 874 (8th Cir. 1999).

reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In evaluating a Rule 12(b)(6) motion to dismiss, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts can properly consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" on a motion to dismiss. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004).

Defendants contend the Court has adequate basis to grant their motion to dismiss all claims without reference to matters outside the pleadings. In the alternative, however, if the Court concludes it cannot grant the motion to dismiss in all respects without reference to additional material, Defendants urge the Court to convert the motion to one for summary judgment pursuant to Federal Rules of Civil Procedure 12(d) and 56, thereby permitting the Court to rely upon the additional information contained in the

affidavits Defendants filed with their motion.

As previously noted, Plaintiff did not file a memorandum of law or a declaration in response to Defendants' motion, either by the extended due date of November 6 or at any time since.

### III. DISCUSSION

A *Bivens* claim "is essentially the federal analog of a Section 1983 action, permitting certain actions for deprivations of civil rights against a federal officer rather than one acting under color of state law." *Flores v. United States*, No. 09-cv-838 (ADM/SRN), 2010 WL 11646677, at *3 (D. Minn. Nov. 29, 2010), *R. & R. adopted*, 2010 WL 11646678 (D. Minn. Dec. 21, 2010), *aff'd*, 689 F.3d 894 (8th Cir. 2012). The Supreme Court in *Bivens* established a judicially-created cause of action in tort for damages arising out of certain constitutional violations by federal officers. Specifically in *Bivens,* the Court held that the plaintiff was entitled to recover money damages for any injuries he suffered as a result of the defendant agents' violation of the Fourth Amendment. *Bivens,* 403 U.S. at 397.

#### A. The Claims Against Defendants in Their Official Capacities

Defendants first move to dismiss all of Plaintiff's claims against Defendants in their official capacities under Rule 12(b)(1) for lack of subject matter jurisdiction. They contend the official capacity claims fail on grounds of sovereign immunity.

The Court agrees. A claim brought against a federal employee in his official capacity is a claim against the United States. *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). *Bivens,* however, provided only for a claim to be asserted against federal

employees in their individual capacities.  "It is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity."  *Id.*  Thus, Plaintiff's official capacity-based claims against all three defendants are barred by the doctrine of sovereign immunity, and those claims should be dismissed.

      **B.**     **Plaintiff's Claims Against Maggard**

Plaintiff claims that Maggard's conduct violated the First and Eighth Amendments.  (Am. Compl. ¶¶ 55–58.)  Defendants argue the Court must dismiss the claims against Maggard under Rule 12(b)(2) because Maggard is not a resident of Minnesota and the acts allegedly giving rise to the claims against him occurred in Missouri.  Accordingly, Defendants argue, the Court lacks personal jurisdiction over Maggard.  (Defs.' Mem. Supp. at 16.)

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court must view the facts alleged in the light most favorable to the party opposing the motion.  *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977).  However, to survive the motion, the plaintiff "has the burden of proving such facts . . . upon which a prima facie showing of jurisdiction may be found to exist."  *Id.*  "[C]ourts may consider matters outside the pleadings to resolve questions of personal jurisdiction in deciding a motion under Rule 12(b)(2)."  *Hester v. Redwood Cnty.*, 885 F. Supp. 2d 934, 943 (D. Minn. 2012) (citing *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011)).

In assessing whether the court has personal jurisdiction over a defendant, "[t]he Court's touchstone inquiries ask whether personal jurisdiction ... is based on 'minimum

9

contacts' and whether assumption of personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To establish personal jurisdiction over a non-resident defendant, two prerequisites must be met: the "forum state's long arm statute must be satisfied and the due process clause must not be violated." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir. 2001).

Minnesota's long arm statute extends jurisdiction over any non-resident defendant so long as doing so would be consistent with due process, and therefore the Court need only concern itself regarding whether the requirements of due process are satisfied. *Id.* The Court's exercise of personal jurisdiction over a non-resident will not offend due process if the defendant "purposefully establishes minimum contacts within the forum state" and the exercise of personal jurisdiction in that state is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Minimum contacts are established if a "defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' the activities." *Id.* at 472.

Defendants argue that Plaintiff supplies no basis whatsoever to conclude that Maggard has engaged in any activity at all in the state, and therefore contends that Plaintiff has failed to meet its burden to demonstrate "some evidence upon which a prima facie showing of jurisdiction may be found to exist." *Aaron Ferer & Sons Co.*, 564 F.2d at 1215. The Court agrees. Plaintiff does not allege that Maggard took any particular

action in the state of Minnesota or directed his activities to impact the state or its residents in any manner. Instead, Plaintiff complains of conduct that took place in Missouri. For his part, Maggard denies ever working, owning property, or even visiting Minnesota. (Maggard Decl. ¶¶ 4–6.) Plaintiff's presumed justification for bringing the suit in Minnesota—that he (Plaintiff) currently is incarcerated here—does not provide a basis for personal jurisdiction over Maggard.[7] Therefore, the Court recommends a dismissal without prejudice of all claims against Maggard.

### C. Plaintiff's Claims Against Feda

Plaintiff describes numerous interactions with Feda, the physical therapist at FMC Rochester, and claims she was deliberately indifferent to Plaintiff's "health, pain and suffering," in violation of the Eighth Amendment. (Am. Compl. ¶ 6 (Section III).) But as Plaintiff acknowledges, Feda is an employee of the United States Public Health Service (PHS). (*Id.*; *see also* Feda Decl. ¶ 1 [Doc. No. 39].) The Federal Torts Claims Act (FTCA), 28 U.S.C. § 1346(b), provides the only remedy for an injury caused by a PHS employee acting within the scope of her official duties. 42 U.S.C. § 233(a). A claim under the FTCA is "exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim." *Id.* That is, a *Bivens* action is not permitted against employees of the PHS. *Hui v. Castaneda*, 559 U.S. 799, 801 (2010) ("[W]e conclude that PHS officers

---

[7] Plaintiff seems to acknowledge that his claim against Maggard does not belong in this District, but states that his "legal paperwork was lost." (Am. Compl. ¶ 56.) Regardless of the reason, his claim against Maggard cannot be pursued here.

11

and employees are not personally subject to *Bivens* actions for harms arising out of such conduct."); *see also Anderson v. United States*, Civil No. 11-1286 (DWF/LIB), 2013 WL 1173948, at *8 (D. Minn. Jan. 25, 2013) (dismissing *Bivens* suit against Feda on basis of § 233(a)).

The Court concludes that Feda enjoys absolute immunity for actions arising out of her performance of duties within the scope of her employment. *Hui*, 559 U.S. at 806. Accordingly, the Court recommends dismissal of all claims against Feda.

### D.   Plaintiff's Claims Against Birkholz

Although the Amended Complaint makes few references to Birkholz and describes no direct interactions between him and Plaintiff, Plaintiff asserts two claims against him. The Court will address each in turn.

#### 1.   Plaintiff's Retaliation Claim

Plaintiff's first claim is that Birkholz retaliated against Plaintiff in violation of the First Amendment by ordering Plaintiff's transfer within FMC Rochester from "Plaintiff's room on 9-2" to Building 10. (Am. Compl. ¶ 38.) Plaintiff describes Building 10 as "an assisted Medical building," but contends there are no electronic door openers on the doors in the housing unit or at the dining hall, which greatly inhibits his ability to get around. (*Id.* ¶ 63.) Plaintiff believes that Birkholz was responsible for the move because when Plaintiff asked an officer why he was being relocated the officer said "the Asst. Warden of medical wants you [Plaintiff] out of the building by 10:00 hrs." (*Id.* ¶ 38.)

Even assuming for the sake of argument that Building 10 is less desirable or less suited to Plaintiff's needs than his previous location (although the Amended Complaint is

12

not clear on this point), and even assuming that it was Birkholz who made the decision to transfer Plaintiff (although the Amended Complaint alleges only hearsay to that effect), the Amended Complaint does not plausibly allege a retaliatory motive for the transfer. Plaintiff can only speculate that the reason for the move was retaliatory. But there are a number of possible explanations for an internal transfer in a facility like FMC Rochester—many of which a prisoner might not be privy to—such as ease of administration and facility management, or the considered conclusion that others were in greater need than Plaintiff of the additional features provided by his prior building.

Importantly, Federal Rule of Civil Procedure 8 requires that Plaintiff's claims be *plausible*, not just *possible*. *Iqbal*, 556 U.S. at 678. Put another way, it is not sufficient that Plaintiff alleges facts—*i.e.* he was transferred to a less desirable building and he was told it was Birkholz's decision—that are merely consistent with Birkholz's liability. If Plaintiff only "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (internal quotations omitted.) Plaintiff has alleged no facts that, if presumed true, would tend to make it more likely than not that Birkholz's decision to move him to Building 10 was retaliatory in motive.

Moreover, the Court has no reason to believe that Plaintiff would be able to adduce such facts if given an opportunity to amend his pleading. Indeed, he has amended his pleading once already, and has moved to amend it again, yet even in the face of the motion to dismiss he has offered nothing to suggest that he could ever allege sufficient facts to make his claim of retaliation against Birkholz cross the line from possible to

13

plausible. The Court therefore recommends a dismissal with prejudice of the retaliation claim against Birkholz.[8]

### 2. Plaintiff's Deliberate Indifference Claim

Plaintiff's second claim is that Birkholz was deliberately indifferent to Plaintiff's "health, pain and suffering." (Am. Compl. ¶ 4 (Section III).) Plaintiff identifies two occasions on which Plaintiff contacted Birkholz via "copout": once on July 27, 2018, to "appris[e] him of all of what was happening in physical therapy" (*Id.* ¶ 25 and Ex. 6 [Doc. No. 15 at 40]), and once on November 14, 2018, when Plaintiff forwarded Birkholz a message he had originally sent to the Warden (*Id.* ¶ 42 and Ex. 11 [Doc. No. 15 at 70–72].) Based on these communications, Plaintiff alleges Birkholz "actually knew about the substantial risk to [Plaintiff] of developing pressure sores from being made to use a manual wheel chair." (*Id.* ¶ 4 (Section III).) Plaintiff alleges that Birkholz is "Head of the Medical Department," so he "had the Authority to satisfy plaintiff's remedies at the Institutional Level, and could have had proper staff to issue aforementioned items." (*Id.*)

Plaintiff invokes Birkholz's oversight and authority apparently in an attempt to establish that he is personally liable for the alleged actions or inactions of the FMC Rochester medical staff. But here, too, *Iqbal* is instructive. In order to make out a claim under *Bivens*, Plaintiff "must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676

---

[8] Because the Court recommends that Plaintiff's claim for retaliation should be dismissed on the ground that Plaintiff has failed to state a claim, it does not reach Defendants' argument that First Amendment claims are not cognizable under *Bivens*. (Defs.' Mem. Supp. at 22.)

(emphasis added). Just because Birkholz is the Associate Warden of Medical does not mean he can be sued for the allegedly illegal acts of his subordinates. "As a non-medical professional, [the warden] is not personally liable for his medical staff's treatment decisions." *Webb v. Hedrick*, 409 Fed.Appx. 33, 36 (8th Cir. 2010). "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions. Prison officials cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002); *see also Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006) (finding jail officials' reliance on the recommendations of a medical provider did not amount to deliberate indifference).

Moreover, even if the Court disregards Feda's declaration and the additional medical records provided therewith [Doc. Nos. 39 and 39-1], the medical records attached to the Amended Complaint by Plaintiff himself show that Plaintiff has received a great deal of medical care and that his care providers have attempted to respond to his needs and complaints, even if not at the level or in the ways Plaintiff would prefer.

In short, there is nothing in Plaintiff's Amended Complaint that plausibly alleges that Birkholz was deliberately indifferent to Plaintiff's needs. And, as with the retaliation claim against Birkholz, Plaintiff's failure to respond to the pending motion to dismiss and/or to seek to amend his complaint to allege additional facts that would tend to make his claims against Birkholz plausible persuades the Court that he would not be able to adduce such facts if given another opportunity. The Court therefore recommends a

dismissal with prejudice of the deliberate indifference claim against Birkholz.[9]

## IV. PLAINTIFF'S MOTION TO AMEND

On November 12, 2019, Plaintiff filed a Motion to Amend his Complaint, seeking to add two additional requests for relief, namely, that automatic door openers be installed on the doors of the dining room and on the doors in all housing units. [Doc. No. 44 at 1.]

Plaintiff's motion fails to comply with the local rules of this District in a number of respects. Specifically, under Local Rule 15.1(a), an amended pleading "must be complete in itself and must not incorporate by reference any prior pleading." Plaintiff's Motion merely noted his new requests for relief but did not reproduce any of the language from Plaintiff's operative pleadings. No complete copy of the proposed amended pleading was filed. Plaintiff also did not include a red-line version of the proposed pleading, as required by Rule 15.1(b). Additionally, Plaintiff failed to file a notice of a hearing, a memorandum of law, a meet-and-confer statement, and a proposed order, as required by Local Rule 7.1(b). Thus, the motion to amend can be denied on that ground alone.

But beyond the procedural deficiencies, Plaintiff's motion must be denied as futile. A court should freely grant leave to amend when justice so requires, but "plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v.*

---

[9] Because the Court recommends that Plaintiff's claim for deliberate indifference should be dismissed for failure to state a claim, it does not reach Defendants' argument that Plaintiff has also failed to exhaust his administrative remedies, nor does it see the need to convert Defendants' motion to a motion for summary judgment and consider the additional evidence submitted by Defendants.

*Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). A court may deny leave to amend in instances where the amendment would be futile, such that the proposed amended complaint could not survive a motion to dismiss for failure to state a claim. *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018).

Plaintiff's proposed amendment only seeks to add new requests for relief, but no relief is warranted if the complaint does not plausibly allege liability in the first instance. Nothing in the proposed amendment would cure the deficiencies described above that lead the Court to recommend that Plaintiff's Amended Complaint be dismissed in its entirety. Put another way, even if the Court permitted Plaintiff to so amend his complaint, his claims would still fail for the same reasons already discussed. Therefore, the Court concludes the proposed amendments would be futile and denies Plaintiff's Motion to Amend.

## V.  RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss [Doc. No. 34] be **GRANTED** and that all of Plaintiff's claims against Defendants be **DISMISSED**. Additionally, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend Complaint is **DENIED** [Doc. No. 44].


Dated: December 16, 2019         s/ *Hildy Bowbeer*
                                 HILDY BOWBEER
                                 United States Magistrate Judge

**NOTICE**

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).